# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

BRANDON CHRISTOPHER RAGLAND,

    Petitioner

v.

BRIAN WILLIAMS, et al.,

    Respondents

Case No.: 2:15-cv-02104-APG-EJY

**ORDER**

This pro se 28 U.S.C. § 2254 habeas petition filed by Brandon Christopher Ragland is before me for final disposition on the merits.

I.     **Procedural History and Background**

As set forth in my order on the respondents' motion to dismiss, on April 30, 2013, a jury convicted Ragland of possession of a firearm by an ex-felon. Exhibit 35.[1] The state district court adjudicated Ragland a habitual criminal under the small habitual criminal statute and sentenced him to 60-150 months, with 182 days credit for time served. Exh. 42. The judgment of conviction was filed on November 12, 2013. *Id.* The Supreme Court of Nevada affirmed Ragland's conviction on April 10, 2014, and remittitur issued on May 5, 2014. Exhs. 48, 49.

On May 12, 2014, Ragland filed a proper person state postconviction habeas corpus petition. Exhs. 50, 54. The state district court denied the petition on September 22, 2014. Exh. 56. The Nevada Court of Appeals affirmed the denial of the petition on February 4, 2015.

---

[1] Unless otherwise noted, exhibits referenced in this order are exhibits to respondents' motion to dismiss, ECF No. 14, and are found at ECF Nos. 15-22, 24-45, 53.

Nevada Court of Appeals Case No. 66646. Remittitur issued on October 14, 2015. Exh. 68. On October 28, 2015, Ragland dispatched his federal habeas petition for filing. ECF No. 6.

## II. Legal Standards

### a. **AEDPA**

The legal standards for my consideration of the petition are set forth in 28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). My ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

3

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

b. **Ineffective Assistance of Counsel**

Six claims of ineffective assistance (IAC) of trial counsel remain in this case. IAC claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming IAC has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

IAC under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the IAC claim is based on a challenge to a guilty plea,

the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an IAC claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*.

The Supreme Court of the United States has described federal review of a state supreme court's decision on an IAC claim as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id*. at 1403 (internal citations omitted). Moreover, federal habeas review of an IAC claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding IAC claims:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so . . . . The *Strickland* standard is a general one, so the range of reasonable applications is substantial . . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105 (citations omitted). "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id*. at 104 (quoting *Strickland*, 466 U.S.

at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id*. (internal quotations and citations omitted).

As discussed below, Ragland has failed to show that the Supreme Court of Nevada's decision on any of his IAC claims was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d).

### III. State-court Record and Instant Petition

#### a. Trial Testimony

Several Las Vegas Metropolitan Police Department officers and forensic experts testified on behalf of the State. Exh. 22. Officer Peter Kruse testified that at about 7:30 a.m. he responded to a domestic disturbance call by a woman who called about her boyfriend or ex-boyfriend Ragland. *Id*. at 5-25. Ragland was no longer at her residence, and the woman gave a description of two vehicles—a black Chevy Tahoe and a blue Mercury Sable—that Ragland might have been driving. Kruse returned to the woman's apartment at about 10:30 a.m. in response to her calling again to say that she had seen Ragland walking around in the vicinity. Kruse saw a vehicle that matched the description of the Mercury in a church parking lot across from the apartment complex. Kruse ran the plates, and the vehicle was registered to Ragland. Records also indicated that Ragland was an ex-felon. Kruse approached the parked vehicle, which was empty. Through the windshield he saw a black firearm and a cell phone on the floorboard. Because Ragland was an ex-felon, Kruse contacted the firearms sergeant and asked for detectives to respond to the scene so that they could seek a telephonic search warrant on the vehicle.

On cross-examination, Kruse stated that he never opened the car door or touched the gun and that he never saw Ragland in the vicinity of the vehicle. *Id*. at 16-22. On re-cross, defense

counsel elicited testimony that the report of another responding officer, Detective Maholick, contradicted Kruse because Maholick had stated that they learned about the Mercury not the first time they responded but only after the woman's second call. *Id*. at 23-25.

Detective Maholick testified that he went to the scene when Kruse called for detectives. *Id*. at 26-44, 51-63. He reconfirmed that Ragland was an ex-felon and that the vehicle was registered to him. He also saw the firearm through the windshield; another detective took photographs. Maholick obtained a telephonic search warrant, and he removed the firearm from the unlocked vehicle. It was a semi-automatic pistol; it was loaded and had a magazine and ammunition inside the magazine. It also had one round in the chamber and the hammer was in the cocked position. They impounded the pistol and some paperwork in Ragland's name. The State directed Maholick to open the sealed evidence box and show the pistol and magazine to the jury. Maholick later arrested Ragland, and, pursuant to a search warrant, Maholick obtained a buccal swab saliva sample for DNA analysis.

A forensic scientist who was a DNA analyst with Metro testified. *Id*. at 75-98. She explained that she visually examined the gun, did not see any fluids on it, and then swabbed the gun for "touch DNA" on the trigger, grip and rough areas on the slide. The DNA profile she obtained was consistent with a mixture, which meant more than one individual. The major contributor was Ragland.[2]

A forensic scientist who works with latent prints for Metro also testified. *Id*. at 99-117. He stated that he identified Ragland's left thumb print from the magazine.

/ / / /

---

[2] The DNA analyst testified that Ragland was a major contributor. She specified that there was a large amount of DNA and the profile was so rare that she could actually identify that it came from Ragland. Exh. 22, pp. 83-84

7

### b. **Instant Petition**

**Ground 3(A)**

Ragland asserts that trial counsel was ineffective for failing to investigate the scene where law enforcement seized the firearm, specifically to ascertain information related to police misconduct and vehicle damage. ECF No. 6, p. 9.

The state district court denied this claim in Ragland's state postconviction petition, finding that he failed to show what an investigation would have revealed or how the findings would have resulted in a different outcome. Exh. 56, p. 4.

Affirming, the Nevada Court of Appeals held that Ragland failed to demonstrate counsel's deficiency or any prejudice:

> Appellant did not demonstrate that his counsel could have uncovered favorable evidence through reasonably diligent investigation. *See Molina v. State*, 87 P.3d 533, 538 (Nev. 2004). In addition, the evidence demonstrating appellant's guilt was overwhelming, as appellant's fingerprint and DNA were discovered on the firearm and the firearm was found in appellant's vehicle. Given the strong evidence of appellant's guilt, he failed to demonstrate that any evidence appellant's counsel could have uncovered would have had a reasonable probability of producing a different outcome at trial.

Exh. 97, p. 3.[3] Ragland simply has presented no evidence of police misconduct or vehicle damage by police. He has not demonstrated that the Nevada Court of Appeal's decision was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Ground 3(A), therefore, is denied.

**Ground 3(B)**

Ragland argues trial counsel was ineffective for failing to file a pretrial state habeas corpus petition to challenge unethical actions by the State during the grand jury proceedings.

---

[3] Exh. 97 is found at ECF No. 53-1.

ECF No. 6, pp. 11-12. Specifically, Ragland alleges that the State improperly presented prior convictions and improper evidence about "touch DNA," and failed to instruct the grand jury on the element of knowledge. He also argues that his counsel failed to challenge the charge of possession of stolen property.

A jury's subsequent guilty verdict renders an error in the grand jury proceedings harmless. *U.S. v. Mechanik*, 475 U.S. 66, 70 (1986). The Nevada Court of Appeals rejected Ragland's claim on appeal of his state postconviction petition, holding:

> [A]ppellant claimed that his trial counsel was ineffective for failing to attend the grand jury proceedings, inform appellant of his right to attend the grand jury proceedings, or argue there was insufficient evidence presented to the grand jury. Appellant failed to demonstrate that he was prejudiced. Appellant was ultimately convicted of the charged offense beyond a reasonable doubt, and thus, could not demonstrate a reasonable probability of a different outcome had he or counsel attended the grand jury proceedings. *See United States v. Mechanik*, 475 U.S. 66, 70 (1986) (holding that any error in the grand jury proceedings was harmless where the defendants were found guilty beyond a reasonable doubt at trial); *Lisle v. State*, 114 Nev. 221, 224-25, 954 P.2d 744, 746-47 (1998).
>
> Appellant also failed to demonstrate a reasonable probability of a different outcome had counsel argued that there was insufficient evidence presented to the grand jury. A review of the record reveals that the State presented sufficient evidence to the grand jury to support a probable cause finding for the charge against appellant. *See, Sheriff, Washoe Cnty. v. Hodes*, 96 Nev. 184, 186, 606 P.2d 178, 180 (1980). Therefore, the district court did not err in denying this claim.

Exh. 97, pp. 2-3. Especially in light of the subsequent jury verdict, Ragland has failed to show that the Nevada Court of Appeal's decision regarding the grand jury claim was contrary to or involved an unreasonable application of *Strickland.* 28 U.S.C. § 2254(d). Habeas relief is denied as to ground 3(B).

////

////

9

**Ground 5(A)(1)**

Ragland contends trial counsel was ineffective for failing to challenge the factual basis of the DNA evidence through "peer review" in order to be able to cross examine the analyst on the methods she used. ECF No. 6, p. 17. The state district court rejected this claim and held that Ragland failed to demonstrate how hiring an independent expert would have resulted in a more favorable outcome, and further found that any objection to exclude the State's expert testimony based on the unreliability of "touch DNA" would have been futile. Exh. 56, p. 5.

Affirming the denial of this claim, the Nevada Court of Appeals stated that Ragland failed to demonstrate that any expert would have testified differently than the State's expert witnesses who testified at trial. Exh. 97, p. 5. The court reasoned that in light of the "overwhelming evidence" of Ragland's guilt presented at trial, he failed to demonstrate a reasonable probability of a different outcome if his counsel had hired an independent DNA expert. *Id.*

The Metro DNA analyst's trial testimony was credible. Moreover, multiple Metro officers testified that Ragland's girlfriend told them Ragland had recently been in the area, the gun was taken from Ragland's car pursuant to a search warrant, and Ragland's thumb print was recovered from the magazine. He has not demonstrated that the Nevada Court of Appeal's decision was contrary to or involved an unreasonable application of *Strickland.* 28 U.S.C. § 2254(d). Federal ground 5(A)(1) is denied.

**Ground 5(A)(2)**

Ragland asserts trial counsel was ineffective for failing to question law enforcement about alleged inconsistencies between the testimony and reports of Officer Kruse and Detective

Maholick. ECF No. 6, p. 17. Concluding that Ragland failed to demonstrate deficiency or prejudice, the Nevada Court of Appeals held:

> Counsel cross-examined the officers regarding the discovery of the firearm in the vehicle and challenged their version of events. Appellant failed to demonstrate that there was a reasonable probability of a different outcome at trial had counsel posed further questions to the officers regarding the discovery of the firearm.

Exh. 97, pp. 5-6. The trial transcript reflects a possible inconsistency between Kruse and Maholick regarding whether Ragland's girlfriend told them that Ragland could be driving a blue Mercury Sable when officers responded to her first or second call. Defense counsel did raise this issue with both officers on the stand. Moreover, any discrepancy is not material, and further questioning on cross examination would not have led to a reasonable probability of a different outcome at trial. As the Nevada Court of Appeals stated, defense counsel thoroughly questioned the officers as to their version of events. Ragland has not demonstrated that the Nevada Court of Appeal's decision was contrary to or involved an unreasonable application of *Strickland.* 28 U.S.C. § 2254(d). Habeas relief is denied as to ground 5(A)(2).

**Ground 5(B)(1)**

Ragland argues trial counsel was ineffective for failing to submit a jury instruction for attempt. ECF No. 6, p. 19. Ragland alleges prejudice because "the State failed to prove the primary element of knowledge by this petitioner of the location and contents" of the vehicle. *Id*.

The state district rejected this claim and found that no evidence was presented at trial that would warrant an instruction for attempt to possess a firearm by an ex-felon and any request by counsel would have been denied. Exh. 56, p. 5. Affirming the denial of this claim, the Nevada Court of Appeals explained:

> [A]ppellant claimed that his trial counsel was ineffective for failing to seek instructions regarding a lesser-included offense of attempted felon in

11

possession of a firearm. Appellant failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. "In Nevada, the statutory definition of an attempt crime is '[a]n act done with intent to commit a crime and tending but failing to accomplish it.'" *Crawford v. State*, 811 P.2d 67, 71 (Nev. 1991) (quoting NRS 193.330). "Because an element of the crime of attempt is the failure to accomplish it, an attempt crime may not be a [lesser] included offense of the completed crime." *Id*. Therefore, appellant was not entitled to a lesser-included-offense instruction for attempted felon in possession of a firearm. Appellant failed to demonstrate that there was a reasonable probability of a different outcome at trial had counsel sought an attempt instruction. Therefore, the district court did not err in denying this claim.

Exh. 97, p. 6. Ragland points to nothing whatsoever to support his contention that a jury instruction for attempt was warranted. He has not shown that the Nevada Court of Appeal's decision was contrary to or involved an unreasonable application of *Strickland.* 28 U.S.C. § 2254(d). Therefore, ground 5(B)(1) is denied.

**Ground 5(B)(2)**

Ragland contends trial counsel was ineffective for failing to present a jury instruction on the defense theory that possession of or contact with the magazine only is not illegal. ECF No. 6, p. 15. Denying this claim, the state district court found that Ragland presented no authority that a jury instruction stating that "contact or possession of only the magazine/cartridge is not described as illegal in any state or federal definition of firearm" is a proper statement of the law. Exh. 56, p. 5.

The Nevada Court of Appeals rejected this claim because Ragland's DNA was obtained from the pistol, and the entire firearm—the pistol and the magazine—was discovered in his vehicle. Exh. 97, p. 7. Ragland has presented nothing to demonstrate that that decision was contrary to or involved an unreasonable application of *Strickland.* 28 U.S.C. § 2254(d). Habeas relief is denied as to ground 5(B)(2).

Accordingly, Ragland's federal petition is denied in its entirety.

## IV. **Certificate of Appealability**

This is a final order adverse to Ragland. As such, Rule 11 of the Rules Governing Section 2254 Cases requires me to issue or deny a certificate of appealability (COA). I have *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

None of my determinations and rulings in this case meets the *Slack* standard. I therefore decline to issue a certificate of appealability for my resolution of Ragland's claims.

## V. **Conclusion**

IT IS THEREFORE ORDERED that the petition (ECF No. 6) is **DENIED**.

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

IT IS FURTHER ORDERED that Ragland's motion for status check **(ECF No. 57)** is **DENIED** as moot.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close this case.

Dated: August 23, 2019.

_____
Andrew P. Gordon
United States District Judge